J-S43021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALEX WATSON | : | |
| | : | |
| Appellant | : | No. 787 EDA 2022 |

Appeal from the PCRA Order Entered February 24, 2022,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0001353-2017.

BEFORE: DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MARCH 27, 2023**

Alex Watson appeals *pro se* from the order denying his first petition filed pursuant to the Post Conviction Relief Act. 42 Pa.C.S.A. §§ 9541-9546. We affirm.

On May 18, 2015, Watson shot and killed the victim. Following his arrest, he was charged with first-degree murder and related charges. He appeared for a jury trial on October 30, 2018. However, the jury could not reach a unanimous verdict, and the trial court declared a mistrial. Prior to his second trial, Watson filed a motion to proceed *pro se*, which the trial court granted. The court appointed Watson's counsel from his first trial as standby counsel.

Watson's second jury trial commenced on April 29, 2019. Previously, this Court reproduced the trial court's detailed account of the evidence presented at the second trial as follows:

> On May 18, 2015, at approximately 10:12 p.m., [the victim] was with his sister, Shaheen Ahmed, at her home on Allison Street in Philadelphia. Before [the victim] left Ahmed's home, he told [Ahmed] he was "going to meet Dil and Master and Conestoga." Ahmed did not know Dil's real name, but knew he was "Aaron's little brother, Leslie." [Watson] whose legal name is Leslie Williams, also lived on Allison Street. Both [Watson's] and Ahmed's homes are about two blocks from the 1300 block of Conestoga Steet, where [the victim's] murder later occurred.
>
> At approximately 11:41 p.m., on the 1300 block of Conestoga Street, between Master and West Thompson Streets, [Watson shot the victim] eighteen times, killing him. Within seconds of hearing the gunshots, Philadelphia Police Officers Michael Carey and Michael Paige arrived at the crime scene, where [the victim] was lying on his back with no sign of life. They observed multiple fired cartridge casings []. [The victim] who suffered from multiple gunshot wounds to the chest, was pronounced dead at the scene. The officers secured the crime scene and waited for the other responding officers to arrive.
>
> Philadelphia Police Officers Andre Dunkley and Marvin Wilkins arrived to the scene about one minute after Officers Carey and Paige. Officer Dunkley observed the 18 [fired cartridge casings] on the ground trailing from [the victim's] body, in the middle of the block, to the rear of a silver Buick Enclave that was parked at the end of the block, near the corner of Conestoga and West Thompson Street. When looking inside the passenger side window, Officer Dunkley saw a silver handgun with a black handle and the slide locked back. At 12:40 a.m., the Philadelphia Crime Scene Unit arrived and recovered all 18 [fired cartridge casings] from the street, [the victim's] cell phone, and a 9 millimeter [R]uger handgun from the car.
>
> Around 2:45 a.m., Officer Wilkins, who remained at the scene to guard the Buick, observed a [Nissan] car pull up to the corner of Conestoga and West Thompson Streets. Quinn Wise got out of the car, walked towards the Buick and attempted to open the front driver's side door. When stopped by officers, Wise

claimed it was her vehicle. When questioned by detectives at the Homicide Unit, Wise stated that her daughter's father, [Watson], told her that the vehicle was on Conestoga Street and asked her to go get it for him. A swab of Wise's DNA was taken.

Keith Schofield arrived in the Nissan with Wise. During an interview with Homicide Detectives, Schofield told detectives that earlier in the evening, he was near Fairmount Park on Kelly Drive with Diashauna Coleman. At approximately 1:34 a.m., after Schofield drove Coleman home, he returned to a missed call from [Watson]. [Watson] asked Schofield to meet him on Master Street between 52nd and 53rd Street. When Schofield arrived, [Watson] proclaimed, "I f***ed up . . . I might have f***ed up." [Watson] then instructed Schofield to take Wise to get the car from Conestoga Street. Schofield identified [Watson] in a photograph as the individual that told him to retrieve the car.

The Homicide Unit focused their investigation on [Watson]. On November 20, 2015, in an attempt to locate [Watson] and obtain his DNA, Philadelphia Detective Joseph Bamberski and Untied States Marshals Fugitive Task Force Agent Timothy Stevenson went to 1336 N. Allison Street, [Watson's] approved parole residence. [Watson's] mother and brother, Aaron Williams, indicated that [Watson] was not home. On November 23, 2015, Detective Bamberski and Agent Stevenson went back to [Watson's] address, and were again unsuccessful in locating him. On February 24, 2016, [Watson] was located by Detective Bamberski and Agent Stevenson at an apartment on the 5100 block of Regent Street in Philadelphia, In furtherance of their investigation, [Watson] was brought to the Homicide Unit for questioning and a buccal swab.

A search of [Watson's] cell phone [] revealed that on November 21, 2015, [Watson] had taken a screenshot of a conversation in which he was discussing the United States Marshals waiting outside his home with a search warrant. On November 27, 2015, [Watson] downloaded a PDF of the "Most Wanted" list from the Pennsylvania State Police website.

Detective [James] Dunlap reviewed the phone records for [Watson's] phone number and discovered that on the night of the murder between 10:01 p.m. and 1:53 a.m., [Watson's] phone was within the geographical area of the crime scene.

Brittany Rehrig, a forensic scientist at the Philadelphia Forensic Lab, conducted DNA analysis of the handgun and the

Buick. [Watson's] DNA was found on the handgun's slide, grip, and trigger, and the Buick's steering wheel. Wise's DNA was detected as a major source on the handgun's magazine. Her DNA was also found on the gearshift and radio control area. The results for [Watson's] DNA on the front and rear driver's side door handles, magazine, gearshift, and radio control area were determined to be inconclusive, but his DNA was not excluded as a source. A defense expert, Katherine Cross, concurred with Rehrig's overall conclusions that [Watson's] DNA was present as a major source on the handgun. On December 13, 2016, after [Watson's] DNA was confirmed as a match, an arrest warrant was prepared.

According to Police Officer Kelly Walker, an expert in the Firearms Identification Unit, all 18 [cartridge casings] were fired from the same handgun, the 9mm Ruger recovered from the Buick. The firearm was capable of holding 18 bullets, 17 in the magazine and one in the chamber.

At trial, the Commonwealth presented a Certificate of Non-Licensure showing that on May 18, 2015, [Watson] was not licensed to carry a firearm.

[In his defense, Watson] presented two lifelong friends as witnesses, Joshua Edwards and Bayyan Finney, who attempted to provide an alibi defense. Finney, who was in custody at the time of trial, also testified that the night before his testimony, he made a phone call to his friend, "Mock," who was on the phone with [Watson] at the time of his call. Mock put Finney on speakerphone so the three of them could have a conversation. [Watson] asked Finney to trade shoes with him before court, because Finney had dress shoes, and [Watson] did not want to wear his Reebok Classic sneakers to trial. During cross-examination, Finney denied that [Watson] attempted to bribe him with a new pair of shoes in exchange for his testimony.

*Commonwealth v. Watson*, 240 A.3d 906 (Pa. Super. 2020), non-precedential decision at 2-5).

On May 3, 2019, the jury convicted Watson of all charges. That same day, the trial court sentenced him to an aggregate sentence of life in prison without parole. Watson filed a timely post-sentence motion, which the trial

court denied on May 13, 2019. Watson appealed, raising four issues, including a challenge to the sufficiency of the evidence supporting his convictions. On September 4, 2020, we rejected Watson's claims and affirmed his judgment of sentence. ***Watson***, ***supra***. On March 31, 2021, our Supreme Court denied Watson's petition for allowance of appeal. ***Commonwealth v. Watson***, 251 A.3d 780 (Pa. 2021).

On September 2, 2021, Watson filed a *pro se* PCRA petition and the PCRA court appointed counsel. On October 13, 2021, PCRA counsel filed a "no-merit" letter and motion to withdraw pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). On October 14, 2021, the PCRA court issued Pa.R.Crim.P. 907 notice of its intent to dismiss Watson's petition without a hearing.

On November 29, 2021, Watson filed a response to the court's Rule 907 notice in which he claimed that PCRA counsel was ineffective for not filing an amended petition and claimed that the trial court's April 27, 2019, waiver-of-counsel colloquy was defective.

Thereafter, the PCRA court permitted PCRA counsel to withdraw and appointed replacement counsel to conduct an independent investigation of Watson's claims. On January 20, 2022, replacement counsel filed a ***Turner***/***Finley*** "no-merit" letter and motion to withdraw. That same day, the PCRA court issued another Rule 907 notice of its intent to dismiss Watson's petition without a hearing. The PCRA court granted Watson's motion for an

extension of time in which to file a response. Watson filed his response on February 7, 2022. By order entered February 24, 2022, the PCRA court permitted new counsel to withdraw and denied Watson's petition.[1] This appeal followed. Both Watson and the PCRA court have complied with Pa.R.A.P. 1925.

Watson raises the following five issues on appeal:

> I. Did the PCRA court err, in its finding that there was no merit in [Watson's] claim, that direct appeal counsel was ineffective for failing to preserve the claim that [Watson's] waiver of counsel was invalid and PCRA counsel was ineffective for failing to raise the claim of ineffective assistance of direct appeal counsel in that regard.
>
> II. Did the PCRA court err, in its finding that there was no merit tin [Watson's] claim, that direct appeal counsel was ineffective in the manner by which he litigated [Watson's] claim of insufficient evidence to support the conviction and PCRA counsel was ineffective for failing to raise the claim of ineffective assistance of direct appeal counsel in that regard?
>
> III. Did the PCRA court err, in its finding that there was no merit in [Watson's] claim, that direct appeal counsel was ineffective for failing to raise the claim of abuse of discretion, where the trial court denied [Watson's] request for a mistrial after a witness's prejudicial comments and PCRA counsel was ineffective for failing to raise the claim of ineffective assistance of direct appeal counsel in that regard?
>
> IV. Did the PCRA court err, in its finding that there was no merit in [Watson's] claim, that direct appeal

---

[1] Review of the docket in this case reveals the PCRA court entered a second order dismissing Watson's petition on February 28, 2022. While it is unclear why this order was necessary, Watson has timely appealed from either date.

counsel was ineffective for failing to preserve the claim of judicial impropriety, where the trial court adopted a prosecutorial function and PCRA counsel was ineffective for failing to raise the claim of ineffective assistance of direct appeal counsel in that regard?

V.      Did the PCRA court err, in its finding that there was no merit in [Watson's] claim, that direct appeal counsel was ineffective for failing to raise the claim of abuse of discretion, where the trial court allowed a witness to testify after she previously heard the testimony of all the other witnesses and PCRA counsel was for failing to raise the claim of ineffective assistance of direct appeal counsel in that regard?

Watson's Brief at 4-5.

This Court's standard of review for an order dismissing a PCRA petition is to ascertain whether the order "is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).

> The PCRA court has discretion to dismiss a petition without a hearing when the court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

**Commonwealth v. Blakeney**, 108 A.3d 739, 750 (Pa. 2014) (citations omitted).

To be eligible for post-conviction relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated errors or defects in 42 Pa.C.S.A. section 9543(a)(2), and that the issues he raises have not been previously litigated or waived. *Commonwealth v. Carpenter*, 725 A.2d 154, 160 (Pa. 1999). An issue has been "previously litigated" if the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue, or if the issue has been raised and decided in a proceeding collaterally attacking the conviction or sentence. *Carpenter*, 725 A.2d at 160; 42 Pa.C.S.A. § 9544(a)(2), (3). If a claim has not been previously litigated, the petitioner must then prove that the issue was not waived. *Carpenter*, 725 A.2d at 160. An issue will be deemed waived under the PCRA "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal, or in a prior state post-conviction proceeding." 42 Pa.C.S.A. § 9544(b).

In each of his appellate issues, Watson raises a layered claim of ineffectiveness. As part of these assertions, Watson alleges the ineffective assistance of PCRA counsel for the first time on appeal pursuant to *Commonwealth v. Bradley*, 261 A.3d 381 (Pa. 2021). To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of

guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. ***Id.*** at 533.

In making a layered claim of ineffectiveness, a PCRA petitioner "must properly argue each prong of the three-prong ineffectiveness test for each separate attorney." ***Commonwealth v. Rykard***, 55 A.3d 1177, 1190 (Pa. Super. 2012). "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel." ***Commonwealth v. Burkett***, 5 A.3d 1260, 1270 (Pa. Super. 2010). "If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." ***Id.***

Here, the PCRA court has authored a thorough and well-reasoned opinion pursuant to Rule 1925(a). The Honorable Barbara A. McDermott has addressed each of Watson's layered ineffectiveness claims with proper citation to legal authorities and citation to the certified record. In addition, she has explained why an evidentiary hearing was not necessary before disposing of Watson's ineffectiveness claims.

We discern no legal errors in Judge McDermott's analysis, and we find her factual findings and credibility determinations fully supported by our review of the record. As such, we adopt Judge McDermott's 1925(a) opinion as our own in affirming the order denying Watson's post-conviction relief. ***See*** PCRA Court's Opinion, 2/24/22, at 14-17 (explaining that because Watson's waiver of counsel colloquy was sufficient, appellate counsel cannot be ineffective for failing to object and preserve the issue for appeal; PCRA counsel cannot be found ineffective for failing to assert meritless claims); at 7-9 (rejecting Watson's layered claim of ineffectiveness because, although this Court found Watson's Rule 1925(b) statement deficient, the court nevertheless ruled on the merits that there was sufficient evidence to support each of Watson's convictions; Watson's claim that counsel should have argued the "equipoise" principle fails because nothing in the record indicated that "two contrary interpretations of evidence could have been presumed by the jury'); at 9-10 (explaining that Watson's claim of improper admission of prior bad act evidence was previously litigated on direct appeal; nonetheless, because Watson's claim is based on "a complete misstatement" of the challenged testimony, Watson's layered ineffectiveness claim fails); at 11-13 (explaining that Watson's claim of judicial impropriety was waived for lack of objection at trial and was otherwise without merit; Watson's layered ineffectiveness claim failed because the trial court did no more than ask the witness to clarify her answer); and 10-11 (rejecting Watson's layered ineffectiveness claim

concerning testimony at his second trial from the victim's sister; no sequestration violation occurred because the sister did not testify at Watson's first trial, and she was properly sequestered for the second trial).[2]

Order affirmed.


*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


Date: *3/27/2023*

---

[2] The parties are directed to attach Judge McDermott's February 24, 2022, opinion to this memorandum in any future appeal.

**IN THE COURT OF COMMON PLEAS**
**FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**
**CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA　　　： CP-51-CR-0001353-2017

　　　　　　　　　　　　　　　　　　：

　　　　　v.　　　　　　　　　　　　：

　　　　　　　　　　　　　　　　　　：　　　　　　**FILED**

ALEX WATSON,　　　　　　　　　　　：　　　　FEB 2 4 2022

　　　　　Petitioner　　　　　　　　：　　　　　　PCRA Unit
　　　　　　　　　　　　　　　　　　　　　　　CP Criminal Listings

**ORDER AND OPINION**

**McDermott, J.**　　　　　　　　　　　　　　　　**February 24, 2022**

**Procedural History**

On December 19, 2016, the Petitioner, Alex Watson, was arrested and charged with Murder and related offenses. On October 29, 2018, the Petitioner appeared before this Court and elected to proceed with a jury trial. On November 6, 2018, the jurors were unable to reach a unanimous verdict, and this Court declared a mistrial. On March 7, 2019, the Petitioner filed a Motion to Proceed *pro se*. On April 29, 2019, this Court granted the Petitioner's Motion and permitted him to represent himself.[1]

On May 3, 2019, a jury convicted the Petitioner of First-Degree Murder, Firearms Not to be Carried Without a License ("VUFA 6106"), Carrying a Firearm on the Public Street in Philadelphia ("VUFA 6108"), and Possessing an Instrument of Crime ("PIC"). This Court immediately imposed the mandatory sentence of life imprisonment for First-Degree Murder, concurrent terms of three to six years imprisonment for VUFA 6106, and one to two years imprisonment for VUFA 6108, for a total sentence of life imprisonment.[2] That same day, this

---

[1] This Court appointed standby counsel.
[2] This Court imposed no further penalty for PIC.

1

Court appointed standby counsel, James F. Berardinelli, as appellate counsel because the Petitioner did not want to represent himself on appeal. On May 10, 2019, counsel filed a Post-Sentence Motion, which this Court denied on May 13, 2019.

On June 7, 2019, the Petitioner filed a Notice of Appeal and the Superior Court affirmed his judgment of sentence on September 4, 2020. On March 31, 2021, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.

On September 9, 2021, the Petitioner filed a *pro se* Post-Conviction Relief Act ("PCRA") petition, his first. On September 10, 2021, this Court appointed George S. Yacoubian, Jr. as PCRA counsel. On October 13, 2021, appointed PCRA counsel filed a no-merit letter pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988). On October 14, 2021, this Court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907.

On November 29, 2021, the Petitioner filed an Objection to the 907 Notice raising claims that PCRA counsel was ineffective for not filing an Amended Petition and that this Court's April 27, 2019 colloquy was defective. This Court appointed Gary S. Server as PCRA counsel to conduct an independent investigation of the Petitioner's claims. On January 20, 2022, replacement PCRA counsel filed a no-merit letter. That same day, this Court filed a Notice of Intent to Dismiss pursuant to Pa.R.Crim.P. 907. On February 2, 2022, after he filed a Motion for an Extension of Time, this Court granted the Petitioner an additional twenty days to file an objection. On February 7, 2022, the Petitioner filed an Objection to this Court's 907 Notice. On February 8, 2022, the Petitioner attempted to file a *pro se* Amended PCRA Petition.[3]

---

[3] The claims raised in the Petitioner's pro se Amended PCRA Petition are essentially the same as those raised in his initial pro se PCRA petition, his November 29, 2021 Objection, and his February 7, 2022 Objection.

## Facts

In its September 4, 2020, Opinion, the Superior Court adopted this Court's summary of the facts in part and recited them as follows:

On May 18, 2015, at approximately 10:12 p.m., Victim was with his sister, Shaheen Ahmed, at her home on Allison Street in Philadelphia. Before the Victim left Ahmed's home, he told her he was "going to meet Dil at Master and Conestoga." Ahmed did not know Dil's real name, but knew he was "Aaron's little brother, Leslie." Petitioner, whose legal name is Leslie Williams, also lived on Allison Street. Both Petitioner and Ahmeds' homes are about two blocks from the 1300 block of Conestoga Street, where the Victim's murder later occurred.

At approximately 11:41 p.m., on the 1300 block of Conestoga Street, between Master and West Thompson Streets, Petitioner shot Victim eighteen times, killing him. Within seconds of hearing the gunshots, Philadelphia Police Officers Michael Carey and Michael Paige, arrived at the crime scene, where the Victim was lying on his back with no sign of life. They observed multiple fired cartridge casings. Victim, who suffered from multiple gunshot wounds to the chest, was pronounced dead at the scene. The officers secured the crime scene and waited for the other responding officers to arrive.

Philadelphia Police Officers Andre Dunkley and Marvin Wilkins arrived at the scene about one minute after Officers Carey and Paige. Officer Dunkley observed the 18 fired cartridge casings on the ground trailing from the Victim's body, in the middle of the block, to the rear of a silver Buick Enclave that was parked at the end of the block, near the corner of Conestoga and West Thompson Street. When looking inside the passenger side window, Officer Dunkley saw a silver handgun with a black handle and the slide locked back. At 12:40 a.m., the Philadelphia Crime Scene Unit arrived and recovered all 18 fired cartridge casings from the street, the Victim's cell phone, and a 9 millimeter Ruger handgun from the car.

Around 2:45 a.m., Officer Wilkins, who remained at the scene to guard the Buick, observed a Nissan car pull up to the corner of Conestoga and West Thompson Streets. Quinn Wise got out of the car, walked towards the Buick and attempted to open the front driver's side door. When stopped by officers, Wise claimed it was her vehicle. When questioned by detectives at the Homicide Unit, Wise stated that her daughter's father, Petitioner, told her that the vehicle was on Conestoga Street and asked her to go get it for him. A swab of Wise's DNA was taken.

3

Keith Schofield arrived in the Nissan with Wise. During an interview with Homicide Detectives, Schofield told detectives that earlier in the evening, he was near Fairmount Park on Kelly Drive with Diashauna Coleman. At approximately 1:34 a.m., after Schofield drove Coleman home, he returned a missed call from Petitioner. Petitioner asked Schofield to meet him on Master Street between 52nd and 53rd Street. When Schofield arrived, Petitioner proclaimed, "I f***ed up . . . I might have f***ed up." Petitioner then instructed Schofield to take Wise to get the car from Conestoga Street. Schofield identified Petitioner in a photograph as the individual that told him to retrieve the car.

The Homicide Unit focused their investigation on Petitioner. On November 20, 2015, in an attempt to locate Petitioner and obtain his DNA, Philadelphia Detective Joseph Bamberski and United States Marshals Fugitive Task Force Agent Timothy Stevenson went to 1336 N. Allison Street, the Petitioner's approved parole residence. Petitioner's mother and brother, Aaron Williams, indicated that Petitioner was not home. On November 23, 2015, Detective Bamberski and Agent Stevenson went back to Petitioner's address, and were again unsuccessful in locating him. On February 24, 2016, Petitioner was located by Detective Bamberski and Agent Stevenson at an apartment on the 5100 block of Regent Street in Philadelphia. In furtherance of their investigation, Petitioner was brought to the Homicide Unit for questioning and a buccal swab.

A search of the Petitioner's cell phone revealed that on November 21, 2015, Petitioner had taken a screenshot of a conversation in which he was discussing the United States Marshals waiting outside his home with a search warrant. On November 27, 2015, Petitioner downloaded a PDF of the "Most Wanted" list from the Pennsylvania State Police website.

Detective James Dunlap reviewed the phone records for Petitioner's phone number and discovered that on the night of the murder between 10:01 p.m. and 1:53 a.m., the Petitioner's phone was within the geographical area of the crime scene.

Brittany Rehrig, a forensic scientist at the Philadelphia Forensic Lab, conducted DNA analysis of the handgun and the Buick. Petitioner's DNA was found on the handgun's slide, grip, and trigger, and the Buick's steering wheel. Wise's DNA was detected as a major source on the handgun's magazine. Her DNA was also found on the gearshift and radio control area. The results for Petitioner's DNA on the front and rear driver's side door handles, magazine, gearshift, and radio control area were determined to be inconclusive, but his DNA was not excluded as a source. A defense expert, Katherine Cross, concurred with Rehrig's overall conclusions that Petitioner's DNA was present as a major source on the handgun. On December 13, 2016, after

4

Petitioner's DNA was confirmed as a match, an arrest warrant was prepared.

According to Police Officer, Kelly Walker, an expert in the Firearms Identification Unit, all 18 fired cartridge casings were fired from the same handgun, the 9mm Ruger recovered from the Buick. The firearm was capable of holding 18 bullets, 17 in the magazine and one in the chamber.

At trial, the Commonwealth presented a Certificate of Non-Licensure showing that on May 18, 2015, Petitioner was not licensed to carry a firearm.

Petitioner presented two lifelong friends as witnesses, Joshua Edwards and Bayyan Finney, who attempted to provide an alibi defense. Finney, who was in custody at the time of trial, also testified that the night before his testimony, he made a phone call to his friend, "Mock," who was on the phone with Petitioner at the time of his call. Mock put Finney on speakerphone so the three of them could have a conversation. Petitioner asked Finney to trade shoes with him before court, because Finney had dress shoes, and Petitioner did not want to wear his Reebok Classic sneakers to trial. During cross-examination, Finney denied that Petitioner attempted to bribe him with a new pair of shoes in exchange for his testimony at trial.

*Commonwealth v. Watson*, No. 1694 EDA 2019 at *2-5 (September 4, 2020) (non-precedential decision) (internal brackets and footnotes omitted).

## Discussion

In his PCRA Petition, the Petitioner raises four issues for review, that appellate counsel was ineffective for not: (1) properly developing his sufficiency claim and not arguing the "equipoise principal" on appeal; (2) properly developing his claim of improper admission of his prior bad act; (3) appealing this Court's ruling to allow a witness to testify who the Petitioner alleges violated the sequestration order; and, (4) appealing this Court's discretion to question a witness, Quinn Wise ("Wise").[4]

---

[4] Petitioner's claim of ineffectiveness regarding appellate counsel's failure to properly develop his claim of improper admission of his prior bad act was not included his *pro se* PCRA petition filed on September 2, 2021, but was subsequently raised in letters with his initial PCRA counsel and was addressed in his initial PCRA counsel's *Finley* letter.

5

This Court must first address the timeliness of the instant petition before reaching the merits of the Petitioner's claims. A PCRA petition must be filed within one year of the date the Petitioner's judgment of sentence becomes final, unless one of three delineated timeliness exceptions are met. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final at the conclusion of direct review, or at the expiration of the time for seeking review. 42 Pa.C.S. § 9545(b)(3). A final order of the Superior Court is any order that concludes an appeal, and a Petition for Allowance of Appeal with the Supreme Court of Pennsylvania must be filed within thirty days after the entry of the Superior Court Order. Pa.R.A.P. 1112; Pa.R.A.P. 1113. A petition for a writ of *certiorari* seeking review of a judgment from a lower state court is timely when it is filed within ninety days after the entry of the order denying discretionary review. U.S.Sup.Ct.R. 13.

The PCRA time requirement is jurisdictional in nature, and a trial court cannot ignore it to reach a petition's merits. *Commonwealth v. Anderson*, 234 A.3d 735, 736 (Pa. Super. 2017) (*citing Commonwealth v. Albrecht*, 994 A.2d 1091, 1093 (Pa. 2010)).

This Court finds that the instant petition is timely. The Petitioner's judgment of sentence became final on June 29, 2021, when the ninety-day period to seek a petition for a *writ of certiorari* with the United States Supreme Court expired. The Petitioner had one year from that date to bring a timely PCRA claim. The instant petition was filed on September 2, 2021; therefore, the instant petition is timely.

Defendants who represent themselves are not entitled to relief under the PCRA for claims of ineffective assistance based on their own failure, or that of standby counsel, at trial. *Commonwealth v. Fletcher*, 986 A.2d 759, 774 (Pa. 2009). Therefore, the Petitioner's decision to waive his right to counsel and represent himself at trial precludes any of the Petitioner's claims alleging his own ineffectiveness or that of standby counsel.

6

To obtain relief on claims of ineffective assistance of counsel, a petitioner must satisfy the performance and prejudice test announced in *Strickland v. Washington*, 104 S. Ct. 2052 (1984). *Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019). In Pennsylvania, courts apply the *Strickland* test by examining whether: (1) the underlying claim has arguable merit; (2) counsel lacked a reasonable basis for his actions or failure to act; and, (3) the petitioner was prejudiced by counsel's deficient performance such that there is a reasonable probability that the result of the proceeding would have been different absent counsel's error or omission. *Id. (citing Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987)). A petitioner's failure to satisfy any prong of this three-part ineffectiveness test is fatal to the claim. *Commonwealth v. Wholaver*, 177 A.3d 136, 144 (Pa. 2018). Courts are not required to analyze the elements of an ineffectiveness claim in any particular order; if a claim fails under any prong of the ineffectiveness test, a court may proceed to that element first. *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1117–18 (Pa. 2012).

To succeed on a stand-alone claim of appellate counsel ineffectiveness, "a PCRA petitioner must demonstrate that appellate counsel was ineffective in the manner by which he litigated the claim on appeal." *Commonwealth v. Koehler*, 36 A.3d 121, 142 (Pa. 2012). A petitioner must establish exactly how appellate counsel was ineffective either "by offering additional evidence or controlling authority, missed by direct appeal counsel, that would have changed the appeal outcome; or by specifically alleging the winning claim or distinct legal theory that appellate counsel failed to recognize; and then by showing how the appeal, as pursued, was incompetent by comparison." *Id. (citing Commonwealth v. Paddy*, 15 A.3d 431, 476 (Pa. 2011)).

The Petitioner's claim that appellate counsel was ineffective for failing to properly develop his sufficiency claim fails. The Petitioner claims appellate counsel was ineffective for

7

failing to specify in his 1925(b) Statement which elements of the crimes were insufficiently proven at trial. The Petitioner also claims his initial PCRA counsel was ineffective for failing to raise a claim that appellate counsel was ineffective for waiving his sufficiency arguments on direct appeal.

On direct appeal, the Petitioner's claim regarding the sufficiency of the evidence was addressed and rejected by the Superior Court. *See Commonwealth v. Watson*, No. 1694 EDA 2019 at *8-10 (September 4, 2020) (non-precedential decision). While the Superior Court did find the Petitioner's 1925(b) Statement deficient, the Superior Court ruled on the merits and agreed with this Court that there was sufficient evidence to support each of the Petitioner's convictions. *Id.*

Both initial PCRA counsel and subsequent PCRA counsel addressed the Petitioner's ineffectiveness claim regarding appellate counsel's lack of specificity in developing Petitioner's sufficiency claim in their *Finley* letters and concluded Petitioner's claim had no merit. Initial PCRA counsel found, and this Court agrees, that appellate counsel's failure to properly develop Petitioner's sufficiency of the evidence claim does not amount to ineffective assistance because the Commonwealth established each of the elements of the charged offenses beyond a reasonable doubt at trial and there was no plausible sufficiency claim which could be made by appellate counsel. Replacement PCRA counsel determined that Petitioner's sufficiency claim was not waived due to appellate counsel's lack of specify and neither prior counsel was ineffective because no plausible sufficiency claim could be made.

The Petitioner argues that both appellate counsel and initial PCRA counsel were ineffective for failing to argue the "equipoise principal." The "equipoise principal" holds that if the evidence presented by the Commonwealth to establish a defendant's guilt is equally consistent with a defendant's innocence, then there is insufficient evidence to sustain the verdict.

8

*Commonwealth v. Garcia*, 251 A.3d 1225, *7 (Pa. Super. March 11, 2021) (unreported memorandum) (citing *Commonwealth v. Tribble*, 467 A.2d 1130 (Pa. 1983)). Nothing in the record indicates that two contrary interpretations of evidence could have been presumed by the jury. The Petitioner has not offered any additional evidence or controlling authority which would have changed the appeal outcome or alleged a legal theory that appellate counsel failed to recognize.

Petitioner claims that appellate counsel was ineffective for failing to properly develop on direct appeal his claim of improper admission of his prior bad act and the denial of his request for a mistrial. Petitioner claims that when Agent Stevenson visited his registered address on November 20, 2015, Agent Stevenson was merely attempting to arrest him because he violated his parole when he failed to notify his parole agent of his change in address. Petitioner further claims that since Agent Stevenson was trying to arrest him in an unconnected matter, it cannot be used to show evidence of flight and improperly implied to the jury that he committed a prior bad act with his violation of parole.

Petitioner's argument that this Court erred in admitting the testimony of Agent Stevenson regarding the Petitioner's parole status has already been rejected by the Pennsylvania Superior Court on direct appeal. *See Commonwealth v. Watson*, No. 1694 EDA 2019 at *13-17 (September 4, 2020) (non-precedential decision). As this claim has already been previously litigated on direct appeal, it cannot be raised again in a PCRA petition. *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (To succeed on collateral review, the petitioner must show that his claims were not previously waived or litigated).

Petitioner's claim also fails as he completely misstates Agent Stevenson's testimony because Agent Stevenson went to the Petitioner's address to effectuate a DNA search warrant for this case. N.T. 5/1/2019 at 39. At trial, Agent Stevenson described the efforts to locate the

Petitioner. *Id.* at 40-41. Although Agent Stevenson's testimony did imply to the jury that the Petitioner committed a prior bad act, the details of the Petitioner's prior bad act were never introduced. The jury was aware of nothing more than the Petitioner's parole status, which was relevant to the police investigation and the location of the Petitioner. This Court also provided a cautionary jury instruction to ensure that the jury consider the evidence only for lawful purposes. Since the Petitioner's claim is based on a complete misstatement of the facts and appellate counsel cannot be held ineffective for failing to raise frivolous claims and this Court could not have erred when it denied his request for a mistrial, the Petitioner's claim fails.

During the Petitioner's mistrial, Shaheen Ahmed, the decedent's sister, was present for testimony because she was not listed by either side as a potential witness. N.T. 4/29/19 at 183. After the mistrial, Ahmed approached the Assistant District Attorney because she recognized her phone number in the Commonwealth's exhibits. *Id.* at 186-188. During the instant trial, after being sequestered and over the Petitioner's objection, this Court allowed Ahmed to testify that on the night the decedent died, he used her cell phone to call the Petitioner. N.T. 5/02/2019 at 26-38. This testimony was supported by her cell and house phone records. Before her testimony, this Court gave the following cautionary instruction:

> Now, members of the Jury, there was a prior proceeding in this case and in that prior proceeding I entered a sequestration order like I did two days ago, maybe three days ago now, saying that no witnesses could be present in the courtroom to hear the testimony of another witness. And the purpose of the sequestration order, I don't know if I've explained that to you in the past, but it's to prevent the testimony of one witness from influencing the testimony of another witness. Now, I want you to know that Shaheen Ahmed was not listed by either side as a potential witness during that hearing and she was present. I believe you're going to hear that she is the decedent's sister, so she was present during the testimony of other witnesses. Now I'm telling you this because in evaluating her credibility of her testimony which is just coming up, you may consider the fact that she was in the courtroom at a prior proceeding and may have heard other witnesses testify. I don't think anyone knows exactly how long she was in the courtroom or

10

what she heard, but there is an agreement, am I correct, that she was present in the courtroom for at least part of the prior proceeding. So, I just wanted to let you know about that before you hear her testimony. Is that satisfactory, Mr. Watson?

*Id.* at 23-24. In response, the Petitioner said "Yes, Your Honor, thank you." *Id.*

The Petitioner's claim that appellate counsel was ineffective for failing to appeal this Court's ruling to allow Ahmed to testify fails. Since Ahmed was not a witness in the mistrial and was properly sequestered for the second trial, she did not violate any sequestration order. Ahmed gave very limited, record supported testimony regarding the phone call the decedent made and her conversation with the decedent. In an abundance of caution, this Court gave a cautionary instruction that informed the jury about Ahmed's presence at a previous hearing. Jurors are presumed to follow the court's instructions. *Commonwealth v. Rose* 172 A.3d 1121 (Pa. Super. 2017). The Petitioner did not object to the cautionary instruction and agreed that the instruction was sufficient. Therefore, by failing to object, the Petitioner has waived this claim. *See* Pa.R.A.P. 302(a).

Even if there had been a violation of a sequestration order, the remedy for a violation of a sequestration order is within the sound discretion of the trial court, and in exercising its discretion, the court considers the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. *Rose,* 172 A.3d at 1131 (citing *Commonwealth v. Smith*, 346 A.2d 757, 760 (Pa. 1975)). The trial court's exercise of discretion should only be disturbed if there is no reasonable ground for the action taken. *Id.* There are reasonable grounds for this Court's chosen remedy and appellate counsel cannot be held ineffective for failing to raise a frivolous claim. *Commonwealth v. Pierce*, 645 A.2d 189, 194 (Pa. 1994); *Commonwealth v. Bickerstaff*, 204 A.3d 988, 992 (Pa. Super. 2019).

Petitioner claims that appellate counsel was ineffective for failing to assert a claim on direct appeal that this Court abused its discretion to question Wise. The Petitioner's claim fails

11

because he did not object to any of this Court's questioning at trial and, therefore, the issue has been waived. Pa.R.A.P. 302(a). Since the Petitioner represented himself and was acting as his own trial counsel, he cannot allege his own ineffectiveness for failing to object and preserve the issue.

Even if Petitioner's claim was not waived, the claim would still fail because, pursuant to Pennsylvania Rule of Evidence 614, the trial court may examine a witness when the interest of justice so requires. The trial court has a duty to ask questions when "absurd, ambiguous, or frivolous testimony is given or testimony is in need of further elucidation." *Commonwealth v. Smith*, 245 A.3d 1120, *6 (Pa. Super. December 31, 2020), re-argument denied (March 9, 2021), appeal denied, No. 175 MAL 2021, (Pa. Aug. 23, 2021) (*citing Commonwealth v. Carson*, 913 A.2d 220, 249 (Pa. 2006)).

On December 3, 2015, Wise called the Petitioner from prison where they talked about their child and the Petitioner hiding from law enforcement. At trial, the Commonwealth asked Wise if she recognized her and the Petitioner's voice. Wise claimed she only recognized her voice and that the other voice was the voice of her friend, she identified as "William." N.T. 4/30/2019 at 130-133. Wise's claim was absurd and a clear attempt to protect the Petitioner. Wise had already recanted her previous statement to police incriminating the Petitioner earlier on in her testimony. This Court allowed the Commonwealth to play more portions of the call to prove the Petitioner's identity, including where they talk about their child and use terms of endearment. This Court did not abuse its discretion when it asked Wise to clarify her testimony about the identity of the individual on the call. *Commonwealth v. Carson*, 913 A.2d 220 (Pa. 2006) (Trial court did not abuse its discretion or show partiality when it questioned a witness on his motives).

12

Additionally, the jury was well aware that this Court was not questioning Wise's credibility because of this Court's introductory instruction. Before opening statements, this Court gave the following instruction:

> It's possible that on occasion, I might ask some questions of the witnesses myself. If I do that, they will not — my questions will not reflect and are not intended to reflect any opinion on my part about the evidence or the case. My purpose would be to inquire about matters that I think should be more fully explored or clarified for you.

N.T. 4/29/2019 at 220-221. Jurors are presumed to follow the court's instructions, so the Petitioner's claim fails. *See Rose* 172 A.3d at 1131-1132. Appellate counsel cannot be held ineffective for failing to raise a frivolous claim. *Pierce*, 645 A.2d at 194; *Bickerstaff*, 204 A.3d at 992.

In his Objection to this Court's 907 Notice filed on November 29, 2021, the Petitioner asserted that: (1) this Court's April 29, 2019 colloquy was defective; (2) appellate counsel was ineffective for not objecting to this Court's April 29, 2019 colloquy and preserving the issue for appeal; and, (3) that PCRA counsel was ineffective for failing to raise the claims set forth in his *pro se* PCRA Petition. In his February 7, 2022 Objection to the 907 Notice, the Petitioner raised an additional claim that subsequent PCRA counsel, Attorney Server, was ineffective for not filing an Amended Petition. On February 8, 2022, the Petitioner attempted to file a *pro se* Amended PCRA Petition.[5]

---

[5] The Petitioner is not permitted to file a pro se Amended Petition while still represented by counsel, without this Court's permission. *See Commonwealth v. Glacken*, 32 A.3d 750, 753 (Pa. Super. 2011) (quashing Appellant's pro se PCRA petition where Appellant is represented by counsel even where Appellant's counsel has not filed a counseled PCRA petition); *see also Commonwealth v. Jette*, 23 A.3d 1032, 1036 (Pa. 2011) (finding "a represented defendant on appeal has only two options: '(1) waive counsel and proceed pro se; or (2) proceed with appellate counsel and, if warranted, raise appellate counsel's supposed ineffectiveness at a later date. But 'the [one] thing he may not do' is raise his own appellate claims while still represented by counsel.'"); *Commonwealth v. Ellis*, 626 A.2d 1137 (Pa. 1993) (prohibiting the court from accepting pro se filings by a represented defendant in the interest of promoting judicial economy in the appellate courts). Although the Petitioner's appointed counsel, Attorney Server, has filed a Motion to Withdraw, this Court has not granted counsel's Motion and the Petitioner is still currently represented by appointed counsel. The Petitioner is also not permitted to file an Amended PCRA Petition

13

When a defendant elects to waive his right to representation, the trial court is required to ensure that the waiver of counsel is knowing, voluntary, and intelligent. *See* Pa.R.Crim.P. 121(A)(2); *Commonwealth v. Spotz*, 18 A.3d 244, 263 (Pa. 2011); *Commonwealth v. Phillips*, 141 A.3d 512, 518 (Pa. Super. 2016). To ensure a defendant is knowingly, voluntarily, and intelligently waiving his right to counsel, a court must conduct "a penetrating and comprehensive colloquy." *Commonwealth v. Phillips*, 93 A.3d 847, 853 (Pa. Super. 2014). On April 29, 2019, this Court conducted a thorough colloquy, which establishes that the Petitioner's waiver of his right to counsel was knowing, voluntary, and intelligent. This Court's April 29, 2019 colloquy was sufficient as it properly advised the Petitioner of all of the elements required under Pennsylvania Rule of Criminal Procedure 121.

First, this Court inquired into the Petitioner's level of schooling, ability to read and write English, access to the law library, history of mental illness, and if he was under the effect of any medication that would interfere with his ability to understand the proceedings. N.T. 4/29/2019 at 6-7, 16. Next, this Court addressed each of the elements required under Rule 121(2). The Petitioner was aware of his right to be represented by counsel as he expressly stated, "I wish to waive my right to assistance of counsel." *Id.* at 6. The Petitioner understood the nature and elements of the charges as this Court stated the charges against him and the Petitioner again rejected a plea offer by the Commonwealth. *Id.* at 7, 16-17. The Petitioner was also aware of the permissible range of sentences as this Court informed the Petitioner that he faced life imprisonment without the possibility of parole if convicted of first-degree murder. *Id.* at 7. Since the Petitioner has already had a mistrial, he was aware of his possible defenses and arguments

---

while the initial PCRA is pending without leave of court. *See Commonwealth v. Porter*, 35 A.3d 4, 12 (Pa. 2012) (a petitioner who wishes to amend a pending PCRA petition must first seek and obtain leave of court); *see also* Pa.R.Crim.P. 905. The Petitioner never sought leave of court to amend his initial pro se PCRA petition prior to filing his Amended PCRA Petition on February 8, 2022.

14

such as the possibility of a second shooter and the strength of the DNA evidence. The Petitioner informed this Court that he knew which witnesses he intended to call and had decided not to present the testimony of experts who conducted cell phone analysis. *Id.* at 9-13. Petitioner also informed this Court that he knew how to pick a jury. *Id.* at 13. Standby Counsel, Attorney Berardinelli, informed this Court that the Petitioner "know[s] the case inside and out as I do." *Id.* at 8. The Petitioner understood that he would have to follow the Pennsylvania Rules of Criminal Procedure, but could confer with standby counsel at the appropriate times. *Id.* at 14-15. This Court explained to the Petitioner that by representing himself and acting as his own trial counsel, he loses the ability to claim that trial counsel was ineffective. *Id.* at 7.

This Court's April 29, 2019 colloquy must be viewed in the context of the entire case. Prior to the colloquy on April 29, 2019, there were two other occasions where this Court conducted a colloquy of the Petitioner. On April 11, 2018, this Court conducted a colloquy wherein the Petitioner was advised of the nature and elements of the charges against him and the range of sentences before rejecting a plea offer from the Commonwealth. After a mistrial and prior to his subsequent trial, this Court conducted another colloquy on October 19, 2018, wherein the Petitioner was again advised of the charges against him and the possible penalties he faced before he rejected the Commonwealth's offer. The Petitioner stated that he understood the charges, the elements of those charges, and the permissible range of sentences because the charges were defined at his mistrial and this Court reminded him about the mandatory sentence at the colloquy. N.T. 11/5/2018 at 27-34; N.T. 4/29/2019 at 7.

This Court's colloquy was not deficient and showed that the Petitioner made a knowing, voluntary, and intelligent waiver of counsel. *See Commonwealth v. Blakeney,* 946 A.2d 645, 655-656 (Pa. 2008) (Defendant made a knowing and voluntary waiver of counsel after the trial court's extensive colloquy); *see also Commonwealth v. Starr,* 664 A.2d 1326, 1336 (Pa. 1995)

15

(Defendant's understanding of his right to counsel was adequately shown through the combination of two different colloquies).

In his Objection to this Court's 907 Notice filed February 7, 2022, the Petitioner cites several cases in support of his claim. *See Commonwealth v. Clyburn*, 42 A.3d 296 (Pa. Super. 2012); *Commonwealth v. Payson*, 723 A.2d 695 (Pa. Super. 1999). Both *Clyburn* and *Payson* involved written waiver of counsel forms signed by the defendants which were found to be insufficient in establishing a knowing, voluntary, and intelligent waiver of counsel without the trial court conducting a comprehensive oral colloquy. In *Clyburn*, the trial court had the defendant sign a written waiver of counsel form, simply asked if the defendant would be representing himself, and had the assistant district attorney inform the defendant about the nature of the charges and the permissible range of sentences. *See Clyburn*, 42 A.3d at 301. In *Payson*, the Superior Court found that a written waiver of counsel form signed before a magistrate was not applicable to a waiver of counsel during a subsequent guilty plea. *Payson*, 723 A.2d at 703-04. The trial courts in *Clyburn* and *Payson* did not conduct a probing colloquy on the record. Unlike in *Clyburn* and *Payson*, this case does not involve a signed written waiver of counsel without a probing colloquy. This Court conducted an extensive colloquy on the record, which properly advised the Petitioner of each of the elements under Rule 121.

Additionally, each of the cases cited by the Petitioner involved a defendant who raised an insufficient colloquy claim on direct appeal. Here, the Petitioner failed to raise a claim challenging the sufficiency of this Court's colloquy on direct appeal and brings his claim in a PCRA petition. As the Petitioner failed to raise this claim on direct appeal, the Petitioner's claim alleging that the colloquy performed by this Court was defective has been waived. *See Commonwealth v. Yarbrough*, 245 A.3d 1107 (Pa. Super. 2020) (Appellant waived nine of his ten claims by failing to raise these claims on direct appeal even where he raised the issues in his

16

*pro se* post-verdict motions and he cannot overcome waiver by alleging his own, or stand-by counsel's, ineffectiveness); 42 Pa.C.S.A. § 9544.

Petitioner claims that appellate counsel was ineffective for failing to challenge this Court's colloquy at the time it occurred and on direct appeal. Since this Court's colloquy was sufficient, appellate counsel cannot be held ineffective for failing to object to the colloquy and for failing to preserve the issue on appeal because the underlying claim has no merit. Appellate counsel and PCRA counsel also cannot be held ineffective for failing to assert claims on appeal that have no merit. Therefore, the Petitioner's claims that appellate counsel was ineffective for not objecting to this Court's April 29, 2019 colloquy and each of his prior counsel was ineffective for not raising a claim challenging this Court's colloquy on appeal fail.

Petitioner's claims that both PCRA counsel are ineffective for failing to file an Amended Petition fail because, as discussed above, his claims have no merit. As PCRA counsel cannot be held ineffective for failing to raise frivolous claims, Petitioner's claims fail. *Montalvo*, 205 A.3d at 286. The Petitioner has failed to show how the review and conclusions reached by either PCRA counsel in their *Finley* letters were incompetent.

For the foregoing reasons, the Petitioner's petition is DENIED and Gary S. Server, Esq. is permitted to withdraw. The Petitioner is hereby notified that he has thirty (30) days from the date of this Order and Opinion to file an appeal with the Superior Court.

BY THE COURT

Barbara A. McDermott, J.

17

*Commonwealth v. Alex Watson,* CP-51-CR-00001353-2017

## PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing filing upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa. R. Crim. P. 114:

Philadelphia District Attorney's Office
Three South Penn Square
Philadelphia, PA 19107
Attn: Tracey Kavanagh

**Type of Service:** **Inter-office Mail**

Alex Watson
QF-3998
SCI Huntingdon
1100 Pike Street
Huntingdon, PA 16652

**Type of Service:** **Certified Mail**

Gary S. Server, Esq.
52103 Delaire Landing
Philadelphia PA 19114

**Type of Service:** **Regular Mail**

**Dated: February 24, 2022**

*Sean McFadden*

**Sean McFadden**
**Law Clerk to the**
**Honorable Barbara A. McDermott**

18